UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYKAL DURRELL MYRICK, <br> Petitioner, <br> v. <br> CRAIG KOENIG, Warden <br> Respondent. | Case No. 17-cv-03122-HSG <br><br> **ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner, a state prisoner incarcerated at Correctional Training Facility – Soledad,[1] has filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of a conviction obtained against him in state court. Dkt. No. 1 ("Pet."). Respondent has filed an answer. Dkt. Nos. 22 and 23. Petitioner has not filed a traverse, and the deadline to do so has since passed. The Court has carefully considered the briefs submitted by the parties. For the reasons set forth below, the petition is DENIED.

## I. PROCEDURAL HISTORY

On July 21, 2011, the Santa Clara County District Attorney charged Petitioner with the first degree murder of Salvador Pena (Cal. Penal Code § 187) with a robbery-murder special circumstance (Cal. Penal Code § 190.2(a)(17)). The information also alleged the personal use of a deadly weapon (Cal. Penal Code § 12022(b)(1)). Ans., Ex. A1[2] ("CT") at 77–79.

On July 8, 2013, a jury acquitted Petitioner of first degree murder, but guilty of second

---

[1] Petitioner initially named Joel D. Martinez as the respondent in this action. In accordance with Rule 25(d) of the Federal Rules of Civil Procedure and Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section 2254, the Clerk of the Court is directed to substitute Craig Koenig, the current warden of Correctional Training Facility – Soledad, in place of the previously named respondent because Warden Koenig is Petitioner's current custodian.
[2] The exhibits to the Answer are docketed at Dkt. No. 23.

degree murder. The jury also found true the allegation of personal use of a deadly weapon. CT 533–34.

On August 20, 2013, Petitioner was sentenced to a total term of sixteen years to life, fifteen years to life for second degree murder, plus a one year consecutive term for the personal knife use enhancement. CT 606–08 and Ans., Ex. B1 ("RT") at 2460.

On April 24, 2015, the California Court of Appeal affirmed the conviction in an unpublished decision. *People v. Myrick*, 2015 WL 1881385 (Cal. Ct. App. Apr. 24, 2015). On July 8, 2015, the California Supreme Court summarily denied the petition for review. Ans., Ex. D2.

Petitioner sought habeas corpus relief in the state courts, alleging prosecutorial misconduct, racially discriminatory jury selection, and ineffective assistance of trial counsel. Pet. at 19, 21–24. On December 21, 2015, the Santa Clara County Superior Court denied the habeas corpus petition. Pet. at 21–24. On October 31, 2016, the California Court of Appeal denied the habeas corpus petition. Pet. at 25. On February 15, 2017, the California Supreme Court denied the habeas corpus petition. Ans., Ex. E2.

On May 31, 2017, Petitioner filed the instant habeas petition. On July 10, 2017, the Court found that the petition stated the following claims: (1) prosecutorial misconduct, (2) racially discriminatory jury selection, and (3) ineffective assistance of trial counsel. Dkt. No. 8.

## II. BACKGROUND

The following factual background is taken from the April 24, 2015 opinion of the California Court of Appeal:[3]

> A. The Prosecution's Case
> 1. The charged offense
> The victim, Salvador Pena, owned a store in which he sold a variety of items, including jewelry, phone cards, and compact discs, and offered services such as check cashing and wire transfers. On the night of December 15, 2010, a witness, who worked in the area, saw

---

[3] The Court has independently reviewed the record as required by AEDPA. *Nasby v. McDaniel*, 853 F.3d 1049, 1055 (9th Cir. 2017). Based on the Court's independent review, the Court finds that it can reasonably conclude that the state court's summary of facts is supported by the record and that this summary is therefore entitled to a presumption of correctness, *Taylor v. Maddox*, 366 F.3d 992, 999–1000 (9th Cir. 2004), unless otherwise indicated in this order.

2

a man with his back against the front glass door of the store looking back and forth. The lights were off inside the store, but a shadow could be seen moving around inside. After a few seconds, the man went inside the store. The witness immediately called 911 at 9:36 p.m. to report the incident and to provide a description of the man.

The police arrived at the store at 9:41 p.m. When the police opened the front door, the victim was on his knees about four feet from the door. He was fully clothed, with blood on his chest. He also appeared to have a severe leg injury.

The police tried to get the victim to come outside, but the victim fell forward in a prone position. The police flipped him onto his back and pulled him out of the business. As officers went inside the business, another officer attended to the victim. The victim had a stab wound in the abdomen and in the chest. The stab wound in the chest had a knife blade partially protruding out. The victim's right leg was fractured, and he had a small cut above the bridge of his nose.

In response to questions from the police, the victim indicated that his name was Salvador Pena and that he was the owner of the store. He was 56 years old. The officer asked what happened, who did this, and what the person looked like. Pena had difficulty breathing and talking. He indicated that he was closing the store when someone pushed him back in and took his keys. The assailant punched Pena in the upper body and stabbed him. The assailant asked for money and did not demand anything else. Pena told the assailant that he did not have any money and showed the assailant his empty wallet. Pena reported to the police officer that he thought his wallet was in the store. Pena indicated that nothing else was taken. Pena gave a description of the assailant but never provided a name of the assailant.

Pena was taken to the hospital for surgery. He remained in the hospital, on a ventilator and unconscious, until he died on January 7, 2011.

Inside Pena's store, a display cabinet appeared to have been pushed off its base and compact discs were scattered on the floor. There were bloodstains on the carpet as well as a knife handle with the blade missing. The knife handle and some of the blood were near a locked screen door, beyond which was a back office area.

The secured, back office area appeared undisturbed. A shipment of jewelry, worth about $15,000 to $20,000, had arrived for the holiday season, and the victim had been weighing and pricing the jewelry during the prior two days. On a desk was a bag of "gold-type" jewelry. There were also two locked safes. One safe contained checks and cash totaling approximately $4,100, while the other safe contained "more expensive-type" alcohol.

In the main store area, large bags of coins were in plain sight and appeared untouched. A key was in the lock of a cash register, which appeared undisturbed. A loaded Beretta pistol was located under a counter near the register.

The police did not locate a wallet in the store. In addition, the victim's business key ring, which contained keys to the safes and to the front door of the store, was missing. At some point, the victim's relative found the victim's driver's license and credit cards, which had about $300 wrapped around them, hidden in a drawer in the store.

The victim's relatives continued operating the business after the victim died. When the police returned to the business on January 4, 2011, the police found a bag containing several packaged condoms and lubricant in an office desk drawer. The police had not previously checked the drawer.

Defendant was the source of the DNA found on the knife handle. The police also determined that there were phone calls between defendant and the victim during the months prior to the

3

incident. On the night of the incident, around 9:13 p.m., the victim had called defendant's cell phone. Defendant's cell phone had been disconnected or was otherwise not in service.

Subsequent to the incident, in early February 2011, a traffic stop was conducted on a vehicle in which defendant was a passenger and his girlfriend was the driver. Defendant was not arrested and was free to leave. He agreed to wait for detectives who wanted to talk to him rather than meeting them at the police station. The detectives told defendant that they were investigating burglaries or robberies on the east side. Defendant was shown a picture of the victim and the victim's store. Defendant indicated that he was familiar with the area, but that he had not been inside the store and that the victim did not look familiar. Defendant went on his way after talking to the police.

Defendant was later arrested on the same date as the traffic stop. During an interview at the police department, defendant indicated that he was 28 years old. When the police told defendant that he had lied during the traffic stop about not knowing the man in the picture, defendant stated that he had seen the man in 2004, but that he did not actually know him. Defendant later admitted that the man was a good friend, that the two called each other on the phone, and that the man had helped defendant with money.

The police told defendant that they were investigating the assault of the man. Defendant eventually indicated that he was sexually involved with the victim and that the two engaged in oral sex. He stated that the victim took care of him, that he had feelings for the victim, and that he would not hurt the victim.

Defendant subsequently indicated during the police interview that, on the night of the incident, the victim had picked him up and they went to the victim's store. At the store, the victim tried to grab defendant and have anal sex, which was something they did not "normally" do. Defendant did not want to have anal sex and wanted the victim to get away from him. Defendant stated that he did not intend to assault the victim. Defendant had a knife because he had problems with other people in the area. The knife was poking defendant, so he took it out and stabbed the victim. Defendant told the police that it was an accident and that he did not mean to hurt the victim. He also stated that he did not jump on the victim, did not break the victim's leg, and did not remember punching him.

Defendant stated that the victim fell backward. At some point, defendant asked the victim if he was "okay," and the victim responded, "Yeah" and "I'm okay." Defendant stated that he used the victim's keys to unlock the door to get out of the store, and that he threw or dropped the keys somewhere. Defendant denied taking anything else from the store. Defendant stated that he tried to call the victim later.

One of the police detectives who interviewed defendant testified that during the interview, defendant indicated that he and the victim had had anal sex at the store on the night of the incident.

The victim's nephew, who frequently helped in the store after school, testified that he had seen defendant in the store monthly and later every two months before the incident. Most of the time, defendant was complaining to the victim about financial issues and needing money from the victim. Afterward, the victim would appear really irritated about defendant wanting money.

Gustavo Betancourt Ortiz, a friend of the victim, testified that he had helped at the victim's store almost every week. The victim confided in Ortiz that he had been having a sexual relationship with defendant for a long time, and that the two engaged in oral sex. [FN 2] Ortiz saw defendant in the store on three or four occasions asking the victim for money. The victim gave defendant small amounts, such as $5. The victim later told Ortiz that he believed defendant had stolen several thousand dollars in cash from the back office of the store in

2004. The victim indicated he was afraid of reporting defendant to the police because he believed defendant would retaliate when he got out of jail. The victim also stated that defendant had called him on the phone a couple of times asking for money and promising that he would treat the victim better. Ortiz testified that the victim had used a wallet in the past, but he did not know whether the victim had used a wallet recently.

> FN 2: Ortiz's testimony about statements made by the victim were not admitted for the truth of the matter stated, but to show the victim's state of mind and/or explain the victim's subsequent conduct.

. . .

B. The Defense Case
Defendant testified in his own defense. He had been in a sexual relationship with the victim since late 2003. They engaged in oral sex but never anal sex. Defendant had "a lot of financial issues," and the victim helped him with money for rent, groceries, or other items. The amount the victim gave depended on defendant's need and might include $200 if defendant was behind on rent.

Defendant testified that the day before the incident, he and the victim planned by phone to meet the following night. On the night of December 15, 2010, the victim drove to pick up defendant and they went to the victim's store. The victim went inside the store to turn off an alarm while defendant waited outside. Defendant admitted that he was the person who the witness had seen standing outside the store. Defendant testified that the victim unlocked the front door and defendant went inside the store.

Defendant testified that the victim indicated that he wanted to have anal sex. The victim tugged at defendant's pants and grabbed at defendant roughly and forcefully. Defendant did not want to have anal sex and told the victim "no." The victim did not answer defendant and continued to grab at defendant's upper body, tug at defendant's pants, and try to turn defendant around. Defendant tried to take the victim's hands off him but the victim's hands kept coming back onto defendant.

Defendant was able to get the victim a half foot away from him, but the victim came back at him. Defendant felt afraid. He thought the victim was "going to have his way" with defendant, even though defendant had told him "no." Defendant had brought a knife with him that night. He testified that the knife, which was in his coat pocket, was poking him so he pulled it out. When the victim came back at him, defendant "panicked" and stabbed him. Defendant testified that he did not stab the victim intentionally, and that it was a "reaction" when the victim came at him. Defendant testified that he might have "overreacted" out of panic.

Defendant testified that he brought the knife to protect himself because the area was not safe. He testified that there were times when the victim would not drive him home and he had to take the bus or light rail home.

Defendant denied being at the store that night to rob the victim. He also denied bringing the knife to stab or rob the victim. He further denied breaking the victim's leg or punching him.

Defendant testified that he lied to police during the traffic stop because his girlfriend was nearby. He did not want her to know about his sexual relationship with the victim or about the incident at the store. Defendant testified that after he was arrested, he told the police that the victim "was trying to do me in my ass. And they interpreted it as 'did' me in my ass, which is not true."

*Myrick*, 2015 WL 1881385, at *1–*6.

## III. DISCUSSION

**A. Standard of Review**

A petition for a writ of habeas corpus is governed by AEDPA. This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-

6

court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Petitioner first raised these claims in his state collateral proceeding. The Santa Clara County Superior Court's December 21, 2015 decision was the last reasoned state court decision that addressed these claims. Accordingly, in reviewing this habeas petition, this Court reviews the Santa Clara County Superior Court's decision. *See Ylst*, 501 U.S. at 803–04; *Barker*, 423 F.3d at 1091–92.[4]

## B. Petitioners' Claims

### 1. Prosecutorial Misconduct

Petitioner argues that the prosecutor engaged in misconduct when he referred to Petitioner as a liar, and minimized the sexual nature of the relationship between Petitioner and the victim. Pet. at 5 and 11. Respondent argues that this claim is procedurally defaulted and that Petitioner has failed to state a cognizable claim of prejudicial misconduct. Dkt. No. 22-1 at 12–15. The state court denied the prosecutorial misconduct claim as follows:

> Petitioner also alleges that the prosecutor purposely misstated the circumstances of the case, apparently by minimizing the sexual nature of the relationship between Petitioner and the victim and calling him a liar on more than one occasion.
>
> It is the longstanding rule that, when a defendant believes the prosecutor has made remarks constituting misconduct during argument, he or she is obligated to call them to the court's attention by a timely objection. Otherwise no claim is preserved for appeal. (See *People v. Osband* (1996) 13 Cla. 4th 622, 696.) The defendant must have made an assignment of

---

[4] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker*, 423 F.3d at 1092 n.3 (citing *Lambert v. Blodgett*, 393 F.3d 943, 970 n.17 (9th Cir. 2004), and *Bailey v. Rae*, 339 F.3d 1107, 1112–13 (9th Cir. 2003)). The look through rule is applicable here as the Ninth Circuit has held that "it is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear." *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

> misconduct and requested that the jury be admonished to disregard the impropriety. (See also *People v. Berryman* (1993) 6 Cal. 4th 1048, 1072; *People v. Samayoa* (1997) 15 Cal.4th 795, 841.) Once again, there is no evidence or allegation that Petitioner made any objection to the prosecutor's remarks, and any challenge on that basis is thus foreclosed (*People v. Morales* (2001) 25 Cal.4th 34.) Because it depends entirely on matters contained in the record of conviction, his failure to raise that issue on appeal will also result in a procedural bar. Habeas corpus is not a substitute for appeal or other direct remedies. (*In re Clark* (1993) 5 Cal.4th 750, *In re Harris* (1993) 5 Cal.4th 813.)

Pet. at 23.

### a. Procedural Default

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). In the context of direct review by the United States Supreme Court, the "adequate and independent state ground" doctrine goes to jurisdiction; in federal habeas cases, in whatever court, it is a matter of comity and federalism. *Id.* The procedural default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can either (1) demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Here, the state court found that the prosecutorial misconduct claim was procedurally defaulted because Petitioner failed to contemporaneously object to the alleged instances of misconduct; and because he failed to raise this issue on direct appeal, citing to *In re Clark*, 5 Cal.4th 750 (Cal. 1993), and *In re Harris*, 5 Cal.4th 813 (Cal. 1993). Both the contemporaneous objection rule and the requirement that claims be raised on direct appeal are adequate and independent state grounds that bar federal habeas review.

The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was, as is the case here, a complete failure to object at trial to alleged prosecutorial misconduct. *See Zapata v. Vasquez*, 788 F.3d 1106, 1111–12 (9th Cir. 2015); *see also Inthavong v. Lamarque*, 420

F.3d 1055, 1058 (9th Cir. 2005) (review of evidentiary claim barred where state court held that claim was procedurally barred because petitioner failed to object at trial); *Paulino v. Castro*, 371 F.3d 1083, 1092–93 (9th Cir. 2004) (review of instructional error claim barred where state court found that claim was procedurally barred because defense counsel failed to contemporaneously object); *Vansickel v. White*, 166 F.3d 953, 957–58 (9th Cir. 1999) (habeas review of peremptory challenge claim barred where state court found that claim was procedurally barred because defense counsel failed to contemporaneously object). In *Zapata*, the petitioner alleged that the prosecutor's "fictional, inflammatory statements in the closing argument" constituted misconduct. The state court held that claim was procedurally barred because counsel did not object to these remarks at trial, but also addressed the claim on the merits. *Zapata*, 788 F.3d at 1111–12. Despite the state court addressing the claim on the merits, the Ninth Circuit held that it could not reach the merits of the prosecutorial misconduct claim because the state court's application of the procedural bar rendered the claim defaulted. *Id.* The contemporaneous objection rule is an adequate and independent state ground that bars federal habeas review of this claim.

The procedural bar referenced in both *Clark* and *Harris*[5] is also referred to as the "*Dixon* rule." Under that rule, to bring a claim in a state habeas corpus action, a petitioner must first, if possible, have pursued the claims on direct appeal from his or her conviction, unless the claim falls within certain exceptions set forth in *In re Dixon*, 41 Cal.2d 756 (Cal. 1953). *See Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000). The Supreme Court has recognized that the *Dixon* rule is both an adequate and independent state procedural rule. *Johnson v. Lee*, 136 S. Ct. 1802, 1803–04 (2016). The state court's denial of the habeas petition on *Dixon* grounds bars federal habeas review. *See id*. at 1804 (*Dixon* is a well-established procedural bar that is adequate to bar federal habeas review).

Petitioner has not demonstrated that this Court can nevertheless consider his claim. He has

---

[5] *See Clark*, 5 Cal.4th at 765–66 ("in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction") (internal quotation marks omitted, citing to *Dixon*); *Harris*, 5 Cal.4th at 829 ("an unjustified failure to present an issue on appeal will generally preclude its consideration in a postconviction petition for a writ of habeas corpus") (citing to *Dixon*).

not alleged, much less demonstrated, either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. The cause standard requires the petitioner to show that "'some objective factor external to the defense impeded counsel's efforts'" to raise the claim. *See McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). But nothing in the record indicates that Petitioner was prevented from objecting at trial to the alleged prosecutorial misconduct, or prevented from raising this issue on direct appeal. The miscarriage of justice exception provides that a federal court may still hear the merits of procedurally defaulted claims if the petitioner can make a showing of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 393–94 (2013). "The miscarriage of justice exception is limited to those *extraordinary* cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *See Johnson v. Knowles*, 541 F.3d 933, 936–38 (9th Cir. 2008) (emphasis in original). Petitioner has not established that the Court cannot have confidence in his guilt. Petitioner has not demonstrated "actual innocence," which requires a petitioner to present new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that would create a credible claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321, 324 (1995). Petitioner has only argued that the prosecutor minimized the sexual relationship between Petitioner and the victim, and that this caused the jury to view the crime differently than if the crime had been committed by a woman in a sexual relationship with the victim. Petitioner's argument does not provide any evidence of actual innocence. Rather, it is an argument that the jury might have weighed the evidence differently if the crime were committed by a woman.

The state court found that this prosecutorial misconduct claim was procedurally barred on independent and adequate state grounds, specifically the contemporaneous objection rule and the *Dixon* rule. Petitioner has failed to demonstrate either cause and prejudice to excuse the default, or that the failure to consider this claim on the merits would result in a miscarriage of justice. Because the state court denied this claim pursuant to adequate and independent state grounds that were correctly applied, federal habeas review of this claim is barred. *See Coleman*, 501 U.S. at

729–30.

### 2. *Batson/Wheeler* Claim

Petitioner argues that he was denied his Sixth Amendment to a fair and impartial jury pool composed of a cross section of the community because the prosecutor used peremptory challenges to systemically exclude African-American jurors or "anyone else who even remotely resembled" him. Pet. at 5, 12–14. The state court denied this claim as follows:

> Petitioner alleges that he was deprived of his right to a jury selected from a fair cross section of the community because the prosecutor used peremptory challenges to systemically exclude African-American jurors or "anyone that even remotely resembled" him.
>
> Both the state and federal Constitutions prohibit the use of peremptory strikes to remove prospective jurors on the basis of group bias, as has been alleged by Petitioner (*Batson v. Kentucky* (1986) 476 U.S. 79; Ct. 1712; *People v. Wheeler* (1978) 22 Cal.3d 258.) The *Batson/Wheeler* inquiry consists of three distinct steps. First, the opponent of the strike must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose in the exercise of peremptory challenges. Second, if the prima facie case has been made, the burden shifts to the proponent of the strike to explain adequately the basis for excusing the juror by offering permissible, nondiscriminatory justifications. Third, if the party has offered a nondiscriminatory reason, the trial court must decide whether the opponent of the strike has proved the ultimate question of purposeful discrimination. (*Johnson v. California* (2005) 545 U.S. 162, 168.) In order to preserve a *Batson/Wheeler* claim based on the prosecutor's peremptory challenges, the defendant must make a timely objection before the jury is sworn. (*People v. Cunningham* (2015) 61 Cal.4th 609, 622.)
>
> Petitioner's claim may not be considered for the first time on habeas corpus. Petitioner has not shown that his claim was properly preserved by a timely objection made in the trial court, and, even if it were, why it was not raised in his direct appeal (H040129). "The writ will not lie where the claimed errors could have been, but were not raised upon a timely appeal from a judgment." (*In re Harris* (1993) 5 Cal. 4th 813, citing *In re Dixon* (1953) 41 Cal.2d 756.)

Pet. at 22–23.

#### a. Procedural Default

As discussed *supra*, a federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman*, 501 U.S. at 729–30. Here, the state court found that Petitioner's *Batson*/*Wheeler* claim was procedurally defaulted because he failed to object before the jury was sworn, citing to *People v. Cunningham*, 61 Cal.4th 609, 622 (Cal. 2015); and because he failed to raise this issue on direct appeal, citing to *In re Harris*, 5 Cal.4th

11

813 (Cal. 1993), and *In re Dixon*, 41 Cal.2d 756 (Cal. 1953). The contemporaneous objection rule is both an adequate and independent state ground, and the state court's denial of this claim pursuant to this procedural bar bars federal habeas review. *Vansickel*, 166 F.3d at 957–58 (petitioner procedurally defaulted his federal due process claim regarding trial court's improper denial of peremptory challenges when he did not timely object at trial). Similarly, the *Dixon* rule is also both an adequate and independent state procedural rule, and the state court's denial of this claim on *Dixon* grounds also bars federal habeas review. *Johnson*, 136 S. Ct. at 1803–04.

Nor has Petitioner alleged, much less demonstrated, either cause for the default, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Nothing in the record suggests that Petitioner was prevented from raising a *Batson* claim at trial, or prevented from raising this issue on direct appeal. *See McCleskey*, 499 U.S. at 493. Moreover, even if he had shown cause, Petitioner's *Batson* claim as articulated in his petition is conclusory, and provides no basis on which the Court could conclude that he suffered prejudice. Pet. at 12–14. Finally, as discussed *supra*, Petitioner has not presented new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that would create a credible claim of actual innocence and entitle him to the miscarriage of justice exception. *See McQuiggin*, 569 U.S. at 393–94. To the extent that Petitioner is arguing that there was provocation in that the victim tried to force him to engage in anal sex, this argument was presented at trial and rejected by the jury, and Petitioner has not presented new reliable evidence that he acted in self-defense.

Because the state court denied Petitioner's *Batson*/*Wheeler* claim pursuant to adequate and independent state grounds that were correctly applied and Petitioner has not satisfied either the cause and prejudice exception or the actual miscarriage of justice exception to the procedural default rule, federal habeas review of this claim is barred. *See Coleman*, 501 U.S. at 729–30. In addition, a state court's decision to deny a *Batson*/*Wheeler* claim because the petitioner failed to challenge the use of peremptory challenges either at voir dire or trial is not contrary to clearly established federal law. *Haney v. Adams*, 641 F.3d 1168, 1169, 1171–73 (9th Cir. 2011) ("petitioner may not raise a *Batson* claim in his habeas petition if the petitioner failed to object to

12

the prosecution's use of peremptory challenges at trial") (affirming district court's denial of *Batson* claim).

### 3. Ineffective Assistance of Counsel

Petitioner argues that counsel was ineffective because she did not make the sexual relationship between Petitioner and the victim a central theme in his defense, and because she did not explore whether the police might have caused the victim's fatal injuries. Pet. at 5, 15–17. The trial court denied this claim as follows:

> To establish ineffective assistance of counsel under either the federal or state guarantee, a petition must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the petitioner. (*Strickland v. Washington*, 466 U.S. 668, 687 688) Petitioner has failed to show that counsel's performance fell below an objective standard of reasonableness or that he suffered any prejudice.
>
> To make out a prima facie case "the petitioner must establish prejudice as a demonstrable reality, not simply speculation as to the effect of the errors or omissions of counsel. The petitioner must demonstrate that counsel knew or should have known that further investigation was necessary, and must establish the nature and relevance of the evidence that counsel failed to present or discover. Prejudice is established if there is a reasonable probability that a more favorable outcome would have resulted had the evidence been presented, i.e., a probability sufficient to undermine confidence in the outcome. The incompetence must have resulted in a fundamentally unfair proceeding or an unreliable verdict." (*In re Cox* (2003) 30 Cal.4th 974, 1016, citing *In re Clark* (1993) 5 Cal.4th 750, 766.) "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*People v. Carrasco* (2014) 59 Cal.4th 924, 982, citing and quoting *Strickland v. Washington* (1984) 466 U.S. 688, 697, *In re Visciotti* (1996) 14 Cal.4th 325, 351-352, and *In re Hardy* (2007) 41 Cal.4th 977, 1032.)
>
> Petitioner claims that trial counsel should have explored the possibility that the conduct of the officers at the scene might have injured the victim further, "even fatally." He offers no explanation other than his subjective expectation that some sort of follow-up might possibly have resulted in favorable evidence. This sort of unsupported speculation is insufficient to establish a demonstrable reality that any prejudice occurred, rendering moot the question of whether counsel's performance was deficient. The same is true for Petitioner's claim that counsel should have emphasized the nature of his relationship to the victim as a 'central theme' of his defense. Without any statement of how that issue was actually addressed at trial, what other defenses were presented, or why counsel's strategy did not fall "within the wide range of reasonable professional assistance," this claim also fails. (See *People v. Vines* (2011) 51 Cal.4th 830, 875-76.)

Pet. at 15–17.

### a. Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things.

First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687–88. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

A federal habeas court considering an ineffective assistance claim need not address the prejudice prong of the *Strickland* test "if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). Conversely, the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *Daire v. Lattimore*, 812 F.3d

14

766, 767–68 (9th Cir. 2016); *see also Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See id.* at 190; *Harrington v. Richter*, 562 U.S. 86, 88–89 (2011) (same); *Premo v. Moore*, 562 U.S. 115, 122 (2011) (same). The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### b. Analysis

Petitioner argues that counsel was ineffective because she did not emphasize the sexual relationship between Petitioner and the victim. He argues that counsel should have emphasized that he had been sexually exploited by the victim for several years; that he was suffering from Stockholm syndrome; and that he panicked when the victim tried to sodomize him. The record contradicts Petitioner's allegation that counsel failed to emphasize these arguments. Counsel highlighted the sexual and romantic relationship between Petitioner and the victim by asking multiple witnesses about their knowledge of the relationship, thereby highlighting the relationship for the jurors, RT 961, 963, 965, 1301; and counsel focused Petitioner's testimony on his sexual relationship with the victim, RT 2552–76. In the closing argument, counsel specifically argued that the relationship between Petitioner and the victim was unequal. She pointed out the age difference between Petitioner and the victim, and argued that the evidence showed that Petitioner acted in self-defense because the victim attempted to coerce him into anal sex. RT 2364–65, 2367–68, 2378–80, 2397, 2410. Petitioner further argues that counsel was ineffective because the jury would have decided differently if he had been a white woman. Contrary to Petitioner's allegation, counsel specifically asked the jury to consider how they would view the situation if Petitioner were a woman. RT 2377–78 ("[if] a woman was sitting next to me and was telling you about her night with a man that she's known for six years and they've always agreed to do

something a certain way but tonight, this night, things got scary. He grabbed her, he turned her around, he pulled at her clothing. She told him no. She was objecting and he was continuing. How would you look at this situation?").

Petitioner also argues that counsel was ineffective because she did not explore whether the police might have caused the victim's fatal injuries. However, as the state court correctly noted, Petitioner has not specified how the police moving the victim's body caused the fatal injuries. To establish ineffective assistance of counsel, a petitioner must provide more than conclusory or speculative allegations. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (denying ineffective assistance of counsel claim that counsel should have presented evidence that petitioner was not shooter when petitioner did not specify the exculpatory evidence and there was overwhelming evidence of petitioner's guilt); *Bragg v. Galaza*, 242 F.3d 1082, 1088–89 (9th Cir. 2001) (mere speculation that evidence might be helpful insufficient to establish ineffective assistance).

The Court has carefully reviewed the record and, keeping in mind the doubly deferential judicial review required in federal habeas cases, finds no evidence that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Because Petitioner "cannot even establish incompetence under the first prong," the Court need not address the prejudice prong of the *Strickland* test. *Siripongs*, 133 F.3d at 737. Petitioner has failed to demonstrate ineffective assistance of counsel. The state court's denial of the ineffective of assistance claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Nor was the state court's denial of these claims based on an unreasonable determination of the facts. Federal habeas relief is denied on these claims.

## C. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the

16

certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: 4/29/2019

*[signature]*
HAYWOOD S. GILLIAM, JR.
United States District Judge